# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-1588
_____

JORDAN M. ANDERSON and
LINDSAY C. HALL, individually,
and ROSS C. EVANS, as personal
representative of the estate of
AUDI J. ANDERSON,

     Appellants,

     v.

SCHOOL BOARD OF ESCAMBIA
COUNTY,

     Appellee.

_____

On appeal from the Circuit Court for Escambia County.
Thomas H. Williams, Judge.

July 23, 2025

NORDBY, J.

This case arose following the death of a child. Four-year old Audi Anderson was a special needs student at Sherwood Elementary School in Pensacola. While eating lunch at school, Audi choked on his food and suffocated. He died at the hospital four days later. Following Audi's death, the Appellants—his parents, Jordan M. Anderson and Lindsay C. Hall, as well as the estate's personal representative, Ross Evans—sued the School Board of Escambia County. Count I alleged wrongful death under

Florida's Wrongful Death Act, section 768.16, Florida Statutes, and Count II alleged negligence under Florida's Survival Statute, section 46.021, Florida Statutes.

The School Board moved for summary judgment on both counts, which the trial court ultimately granted. For Count I, the trial court found that the Appellants had failed to give the School Board pre-suit notice of the wrongful death claim in accordance with section 768.28, Florida Statutes. And for Count II, the trial court concluded that the "abatement clause" in Florida's Wrongful Death Act precluded the Appellants' negligence/survival action. This timely appeal followed the trial court's entry of final judgment for the School Board.

The Appellants challenge the trial court's summary judgment rulings on several grounds. We affirm the final judgment, but we write to address two issues concerning the Appellants' wrongful death claim: (1) whether pre-suit notice to the School Board was required under section 768.28, Florida Statutes, and (2) if such statutory pre-suit notice was required, whether various communications with the School Board satisfied that condition precedent.

I.

The choking incident at school occurred on September 19, 2017, and Audi died in the hospital four days later. While Audi was hospitalized, his mother, Lindsay Hall, retained Louisiana attorney Timothy Upton to represent her. Upton is licensed to practice law in Louisiana but has never been admitted to any other state. Upton promptly mailed a letter via certified mail to the school's principal on September 20th. In it, Upton introduced himself as representing both Hall and Audi and requested access to any available video surveillance footage.

Upon receiving the letter, the principal forwarded a copy to the School District's Assistant Superintendent. The School District's Director of Risk Management also recalled seeing the letter, which prompted him to assign School District Attorney Steven Baker to handle the matter. So, Baker called Upton and told him that he represented the School Board. Baker also emailed

a response to Upton's letter on September 28, 2017, prompting a series of emails between Baker and Upton.

In his October 2, 2017, email, Upton requested again to see the video footage. He also requested information about insurance and media coverage. He then made two references to avoiding formal litigation. First, Upton wrote, "I assume you and your client would much prefer to handle this matter without court interaction, as would we. Thus, I currently have no subpoena power and am relying solely on you and your client's professionalism, courtesy and cooperation." Second, he wrote,

> Not to put the cart before the horse, but would you be interested in sitting down for some coffee and a meaningful discussion on how we might be able to work something out and nip this one in the bud, if at all possible. Lindsay, Audi's mother, would benefit tremendously from something accomplished without having to relive this nightmare over and over again through the normal litigation procedures. In doing my due diligence, I must admit that I've enlisted the services of a Florida trial lawyer to assist me, should your client choose to take any position contrary to the best interests of my clients, which you've given me no indication will be occurring. Of course, he's ready to proceed, but I often find an informal, reasonable discussion over coffee, one truly in good faith, often leads to nearly identical results to those often achieved through years of expensive litigation. I'm game if you are.

The next day, Upton sent a follow-up email to Baker to schedule a time to review the video footage. Upton also stated that he was aware of and taking care of the "notice requirements."

A couple of days later, Upton sent another email about the video footage. In this email, Upton included internet links to multiple statutes and again referenced the notice requirements: "Here is the actual waiver of sovereign immunity statute. Which also talks about the notice requirement as well." Upton and Baker exchanged several more emails to schedule a time to review the footage in Pensacola. All told, during the month following Audi's

death, Upton and Baker communicated via email and telephone more than fifteen times and met in person for Upton to view the video footage. Upton's last contact with Baker, or anyone associated with the School Board, was through email on October 19, 2017. In the email to Baker, Upton shared his "preliminary opinion as to liability" after reviewing the video footage. Upton declared that Audi's death was "one of the most extreme case[s] of gross negligence that [he had] witnessed in [his] 17 years of practicing injury law." As a "professional courtesy," Upton notified Baker "that I'll be providing a follow up statement to the media at their request relative to my opinion as to liability."

During this same window of time, Audi's father, Jordan M. Anderson, engaged Florida attorney Harry Harper to represent him. In October 2017, Harper requested school records, audio and video recordings of Audi, any school personnel communications regarding Audi, and any school personnel communications about the choking incident. The Superintendent's Office forwarded Harper's letter to Risk Management and the School Board's General Counsel. Audi's father sent a follow-up letter in December 2017 repeating the request for these records.

After realizing that the case was "not going to resolve quickly," Upton engaged the services of Florida attorney Jeffrey Monroe to file a lawsuit. On June 26, 2018, Monroe sent a formal Notice of Claim to the Department of Financial Services (DFS):

> Please be advised that the undersigned attorney has been retained to represent Lindsay Hall ("Ms. Hall"). Ms. Hall's son, Audi Anderson, was injured in a choking incident at Sherwood Elementary, located at 501 Cherokee Trail, Pensacola, Florida 32506, on or about September 1, 2017.
>
> This letter is formal notice under Section 768.28, Fla. Stat., of the intent of Ms. Hall to file civil tort claims against the County of Escambia.
>
> Pursuant to Section 768.28(6)(c), Fla. Stat., the following information is provided:

4

(1) Claimant: Lindsay Hall on behalf of Audi Anderson;

(2) Claimant's date and place of birth and social security number:

> a. Audi Anderson, born January 7, 2013, in Pensacola Florida, [redacted] and

(3) There exist no prior adjudicated, unpaid claims in excess of $200.00, owed by any of the foregoing claimants to the state, its agencies, officers, or subdivisions.

If you or your legal representatives have any questions about the contents of this notice, or if you allege that this notice is in any way defective under Section 768.28, Fla. Stat., please notify me immediately.

The Appellants ultimately filed suit against the School Board for wrongful death and negligence on September 19, 2019. Over a month later, on October 22, 2019, Monroe mailed a certified, return-receipt-requested Notice of Claim letter to the School Board, which stated that it was a "notice of tort claim under Section 768.28, Florida Statutes." This post-suit Notice of Claim provided details about the claim and stated, "This letter is formal notice under Section 768.28, Fla. Stat., of the intent to file civil tort claims against the School Board of Escambia County Pursuant to Section 768.28(6)(c), Fla. Stat . . ."

As mentioned above, the trial court granted summary judgment on both counts and entered final judgment for the School Board. For Count I, the trial court concluded that the Appellants failed to give the School Board the statutorily required pre-suit notice of the wrongful death claim. We now explain why the trial court was correct.

5

## II.

To begin, we note that the new summary judgment standard applies to this case. Within the past few years, the Florida Supreme Court amended Florida Rule of Civil Procedure 1.510 to align Florida's standard with Rule 56 of the Federal Rules of Civil Procedure. *In re Amends. to Fla. R. of Civ. P. 1.510*, 317 So. 3d 72, 77 (Fla. 2021). Because this case was adjudicated after the new standard's effective date of May 1, 2021, we view this case through the lens of the new rule. *Id.* (providing that the new rule "govern[s] the adjudication of any summary judgment motion decided on or after that date, including in pending cases").

To obtain summary judgment under this standard, a moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510. The test for the existence of a genuine factual dispute is whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *In re Amends. to Fla. R. of Civ. P. 1.510*, 317 So. 3d at 75 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A movant is not required to disprove the opposing party's claims. *Id.* Instead,

> [A] movant can satisfy its initial burden of production in either of two ways: "[I]f the nonmoving party must prove X to prevail [at trial], the moving party at summary judgment can either produce evidence that *X* is not so or point out that the nonmoving party lacks the evidence to prove *X*."

*Id.* (citing *Bedford v. Doe*, 880 F.3d 993, 996–97 (8th Cir. 2018)).

For the statutory interpretation issue presented, our review is de novo. *Fagan v. Jackson Cnty. Hosp. Dist.*, 379 So. 3d 1213, 1215 (Fla. 1st DCA 2024).

## A.

This case turns on whether the Appellants failed to give timely and sufficient pre-suit notice to the School Board. There is no dispute that the Appellants provided pre-suit notice to DFS. But

there is a good bit of dispute over whether the Appellants also had to provide pre-suit notice to the School Board.

We begin with section 768.28(6), Florida Statutes, and whether it required pre-suit notice to the School Board.

Section 768.28(6) provides:

(a) An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality, county, or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing; except that, if:

. . .

2. Such action is for wrongful death, the claimant must present the claim in writing to the Department of Financial Services within 2 years after the claim accrues.

(b) For purposes of this section, the requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintaining an action but shall not be deemed to be elements of the cause of action and shall not affect the date on which the cause of action accrues.

§ 768.28(6)(a)-(b), Fla. Stat.

Because this statute is part of Florida's statutory waiver of sovereign immunity, we strictly construe it. *City of Jacksonville v. Boman*, 320 So. 3d 931, 934–35 (Fla. 1st DCA 2021) (citing *Barnett v. Dep't of Fin. Servs.*, 303 So. 3d 508, 510, 513 (Fla. 2020) (recognizing "this Court's long-standing precedent that strictly construes Florida law waiving sovereign immunity," and requiring

7

any waiver of immunity to be construed narrowly and in favor of the government); *Menendez v. N. Broward Hosp. Dist.*, 537 So. 2d 89, 91 (Fla. 1988) (rejecting argument that Florida Department of Insurance had constructive notice of claim from other sources, and holding that under section 768.28(6), failure to give direct notice was fatal to complaint); *Maynard v. State, Dep't of Corr.*, 864 So. 2d 1232, 1234 (Fla. 1st DCA 2004) (noting "there is little room for substantial compliance")).

Under the plain language of section 768.28(6), we conclude that the School Board was entitled to pre-suit notice of the Appellant's wrongful death claim. Paragraph (a) imposes the clear condition that—regardless of the type of claim—an action "may not be instituted on a claim . . . unless the claimant presents the claim in writing to the appropriate agency." § 768.28(6)(a), Fla. Stat. The statute then requires additional notice to DFS within three years of accrual for any claim that is not "against a municipality, county, or the Florida Space Authority." § 768.28(6)(a), Fla. Stat. These two requirements are separated by the phrase "and also," which signifies that they are independent conditions. § 768.28(6)(a), Fla. Stat. The statute then sets out two exceptions to the second rule about notice to DFS. Relevant here, the second exception states that when an action is for wrongful death, "the claimant must present the claim in writing" to DFS within two years of the claim's accrual. § 768.28(6)(a)2., Fla. Stat. This last provision neither disturbs nor displaces the primary (and separate) requirement that claimants provide pre-suit notice to the appropriate agency.

Several nearby provisions confirm this reading. Paragraph (b) reiterates that "the requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintaining an action." § 768.28(6)(b), Fla. Stat. And paragraph (d) provides that "in wrongful death actions," the failure of DFS or the appropriate agency to "make final disposition of a claim within 90 days after it is filed shall be deemed a final denial of the claim." § 768.28(6)(d), Fla. Stat. Moreover, "[t]he statute of limitations for . . . wrongful death actions is tolled for the period of time taken by the Department of Financial Services or the appropriate agency to deny the claim." *Id.* If notice was required *only* to DFS in wrongful death claims, the references to "the agency" and "the appropriate agency" in these provisions would make no sense. Instead, our

reading of 768.28(6) accounts for the Legislature's inclusion of the terms "agency" and "appropriate agency" in these provisions and avoids rendering them superfluous. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) ("If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." (footnote omitted)).

Based on the plain language of the statute, we hold that section 768.28, Florida Statutes, required the Appellants to provide the School Board—as the "appropriate agency"—with pre-suit notice before filing their wrongful death claim.

### B.

Next, having concluded that section 768.28(6) required pre-suit notice to the School Board, we turn to whether the communications between the Appellants' attorneys and the School Board were enough to satisfy this condition precedent.

The Appellants maintain that any required notice to the School Board was provided through a combination of Upton's, Harper's, and Audi's father's communications with the School Board. To be fair, these documents confirm that the School Board was aware of the incident and the *potential* for a lawsuit. Still, the correspondence makes no claim. There was no demand for compensation nor any notice of an imminent claim. Both Mr. Anderson's and Harper's communications related to requests for records. Upton's correspondence was more extensive, but his writing suggested that he was trying to avoid litigation. While the School Board may have known of the potential for a lawsuit, section 768.28(6) requires written notice and the opportunity to investigate and respond. Here, it does not appear that the School Board had the formal opportunity to do so. The Appellants eventually provided the School Board with formal notice, but it was after the lawsuit's filing. On the record before us, the written communications provided to the School Board fail to satisfy the notice requirements of section 768.28(6).

Given all this, we affirm the final judgment.

AFFIRMED.

ROBERTS and WINOKUR, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Dwight O. Slater of Guilday Law, P.A., Tallahassee, for Appellants.

Steven J. Baker of Steven J. Baker, P.A., Pensacola, for Appellee.